Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
dgerrard@gerrard-cox.com
John M. Langeveld, Esq.
Nevada Bar No. 11628
jlangeveld@gerrard-cox.com
**GERRARD COX LARSEN**
2450 St. Rose Pkwy., Suite 200
Henderson, Nevada 89074
(702) 796-4000 (telephone)
(702) 796-4848 (facsimile)
*Attorneys for* BIGELOW AEROSPACE, LLC,
a Nevada limited liability company

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BIGELOW AEROSPACE, LLC, a Nevada limited liability company, | Case No. |
| Plaintiff, | Dept. No. |
| vs. | |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION (NASA); DOES 1-10, and ROE ENTITIES 1-10, inclusive, | |
| Defendants. | |

## **COMPLAINT**

COMES NOW, Plaintiff BIGELOW AEROSPACE, LLC by and through its attorneys, GERRARD COX LARSEN, and hereby files its Complaint against Defendants, as follows:

PARTIES

1.  Plaintiff BIGELOW AEROSPACE, LLC ("Bigelow Aerospace") is a Nevada limited liability company, and is duly licensed and doing business in Clark County, Nevada.

2.  Defendant NATIONAL AERONAUTICS AND SPACE ADMINISTRATION ("NASA") is a federal government agency, headquartered in Washington, DC.

3.  The true names of Defendants DOES 1-10 and ROE ENTITIES 1-10, inclusive, are unknown to Plaintiff at this time, and therefore Plaintiff brings suit against them by the foregoing fictitious names. Plaintiff is informed and believes, and upon such alleges, that each of the Defendants designated as a DOES, and ROE ENTITIES, is responsible in some manner for the

events and happenings referred to in this Complaint.  Plaintiff will ask leave of this Court to amend this Complaint and insert the true names and capacities of said the DOE and ROE ENTITIES Defendants, inclusive, when the same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join these Defendants in this action.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1346, as the Plaintiff brings this suit against NASA, which is a government agency of the United States of America.  Furthermore, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1491(a)(1), because Plaintiff's claims are based upon express or implied contracts with NASA, which is an agency of the United States of America.

5. Venue is appropriate in the United States District Court for the District of Nevada, in that the Defendants can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391(e).  Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claim occurred in Las Vegas, Nevada.  *See* 28 U.S.C. § 1391(b)(2).

## PROCEDURAL REQUISITES

6. All conditions precedent to the filing of this action have been met by Plaintiff in that it has filed a timely claim in compliance with The Contract Disputes Act of 1978 (CDA).

7. On December 17, 2021, Robert T. Bigelow, President of Bigelow Aerospace, sent a payment demand letter ("First Demand Letter") to NASA Contracting Officer Doug Craig, Strategic Analysis and Planning Manager, Human Exploration and Operations Mission Directorate, pursuant to which Bigelow Aerospace made a demand for payment in the amount of ONE MILLION FIFTY THOUSAND and NO/100 DOLLARS ($1,050,000.00) (the "Demand Amount"), in relation to Bigelow Aerospace's full performance of certain obligations under NASA Contract No. NNH15CN82C (the "Contract"), which resulted in NASA's payment obligation (*see* further detailed allegations related to the terms and performance of the Contract, stated below).  The First Demand Letter noted that Bigelow Aerospace had fully performed its obligations under the Contract, giving rise to NASA's payment obligation, had performed in good faith, and that it was now seeking immediate payment from NASA.

8. On or about January 6, 2021, Bigelow Aerospace, through its former counsel, Alistair B. Dawson, Esq., of the law firm of Beck Redden LLP, sent a second demand letter ("Second Demand Letter") to NASA Contracting Officer Doug Craig, pursuant to which Bigelow Aerospace made a second demand for payment of the Demand Amount. The basis of the Second Demand Letter was once again that NASA had failed to pay Bigelow Aerospace the Demand Amount that was due and owing, despite the fact that Bigelow Aerospace had fully performed under the Contract, to trigger NASA's payment obligation.

9. On February 6, 2021, NASA Attorney Vince Vanek, LS01 / Office of Chief Counsel, responded to the Second Demand Letter via email (the "February 6, 2021 NASA Email"), whereby Mr. Vanek demanded that Bigelow Aerospace provide NASA with extensive test data that Bigelow Aerospace was not obligated to provide under the terms under the Contract, prior to receiving payment from NASA. Otherwise, NASA ignored Bigelow Aerospace's payment demand, and made no offer to pay Bigelow Aerospace the Demand Amount.

10. On February 17, 2021, Bigelow Aerospace, through its newly retained counsel, Douglas D. Gerrard, Esq., of the law firm of Gerrard Cox Larsen, sent a third demand letter to NASA attorney Vince Vanek ("Third Demand Letter"), whereby Mr. Gerrard outlined to Mr. Vanek that Bigelow Aerospace had already fully performed all obligations under the Contract entitling it to payment, and that it would not incur the additional, significant costs that NASA was now requesting from Bigelow Aerospace as a prerequisite to NASA paying the Demand Amount, and that NASA's new demands would result in significant delay, expense, and financial harm to Bigelow Aerospace. In the Third Demand Letter, a payment deadline by Bigelow Aerospace was set for February 28, 2021.

11. On March 6, 2021, NASA Attorney Vince Vanek, LS01 / Office of Chief Counsel, responded to the Third Demand Letter via email (the "March 6, 2021 NASA Email"), whereby Mr. Vanek once again demanded that Bigelow Aerospace provide additional raw test data from Bigelow Aerospace's testing carried out under the Contract, as a prerequisite to Bigelow Aerospace being paid the Demand Amount by NASA. However, this requirement was not a term of the Contract,

/ / /

3

and was an attempt by NASA to place additional requirements on Bigelow Aerospace that had not been part of the parties' agreement, as memorialized by the Contract.

12. The February 28, 2021 payment deadline stated in Bigelow Aerospace's Third Demand Letter to NASA has now expired, and NASA has failed to pay Bigelow Aerospace the amounts due and owing under the Contract.

13. Accordingly, Bigelow Aerospace has exhausted all other administrative remedies with NASA to remedy and pursue its claim, and now brings the instant claim in this Court.

## GENERAL ALLEGATIONS

14. Bigelow Aerospace is an American space technology company which develops, designs, and manufactures, among other things, expandable space station modules ("Expandable Modules").

15. One of the Expandable Modules developed and designed by Bigelow Aerospace is its Expandable Bigelow Advanced Station Enhancement (the "B330"), which is a full-sized ground prototype expandable module, intended for deep space habitation.

16. Related to the B330 project, during or about August, 2016, Bigelow Aerospace entered into an agreement with NASA, identified as Contract No. NNH15CN82C, NextSTEP Phase 2 B330 (i.e., the "Contract"), whereby Bigelow Aerospace agreed to perform and complete a certain long term pressure leak test on its prototype B330 module, for the benefit of NASA, referred to as the CLIN5b Long Duration Leak Test ("LDL Test"), for the purpose of demonstrating that the B330 module meets NASA's standards of construction and reliability. The allowed leak variance under the LDL Test and the test procedures were specified by NASA in the Contract and related documents.

17. Under the terms of the Contract, Bigelow Aerospace was required to perform a leak test on the B330 module, and provide certain periodic test reports to NASA (the "Report(s)") detailing the progress and results of the test. Each scheduled Report was required to summarize the results of the LDL Test for a set period of time, and specifically set forth whether the B330 had met the minimum allowed leak variance, which variance standard was set by NASA (the "Contract

///

4

Deliverables"). The schedule for the Bigelow Aerospace providing the Contract Deliverables to NASA, as set forth in the Contract, was as follows:

**LONG DURATION LEAK MILESTONES**

|  | Milestone 1 | Milestone 2 | Milestone 3 | Milestone 4 | Milestone 5 | Milestone 6 | Milestone 7 |
|---|---|---|---|---|---|---|---|
| Description | Assembly of LDL Primary Structure Completed | Settling Period + 30 days | Leak Rate Calculation #1 +60 days | Leak Rate Calculation #2 +90 days | Leak Rate Calculation #3 +120 days | Leak Rate Calculation #4 +150 days | Leak Rate Calculation #5 +180 days |
| **Contract Deliverable** | - | 1st Report | 2nd Report | 3rd Report | 4th Report | 5th Report | 6th Report |

18. Importantly, the Contract contains **no** requirement that Bigelow Aerospace had to provide NASA with continuous and/or raw LDL Test data; rather, in the required Contract Deliverables (i.e., providing NASA the scheduled LDL Test Reports) Bigelow Aerospace was only required to provide sufficient data to NASA in its Reports to show and demonstrate that pressure was maintained in the B330 module, over a 6-month period, within the allowable variance.

19. Under the terms of the Contract, in exchange for Bigelow Aerospace completing the 6-month LDL Test and providing NASA with the six (6) scheduled Contract Deliverables (i.e., providing the scheduled LDL Test Reports), NASA agreed to pay Bigelow Aerospace the contract price of ONE MILLION SIX HUNDRED FIFTY THOUSAND and NO/100 DOLLARS ($1,650,000.00), of which the remaining balance owed to Bigelow Aerospace is ($1,000,000.00) (the "Contract Amount")[1].

20. On or about December 21, 2019, Bigelow Aerospace commenced with the scheduled LDL Test, in accordance with the Contract.

///

///

---

[1] Bigelow Aerospace has determined that the actual amount presently due is $1,000,000.00, rather than the $1,050,000.00 described in the Demand Letters.

5

21. Thereafter, Bigelow Aerospace fully performed the LDL Test according to the testing standards and schedule agreed upon by NASA and Bigelow Aerospace, and completed the LDL Test on or about August 31, 2020.

22. In accordance with the terms of the Contract, Bigelow Aerospace provided the following Contract Deliverables (scheduled LDL Test Reports) to NASA:

    (1) December 13, 2019 and January, 2020 (a combined report for a two-month period as DOC-101318 ("**Report No. 1**");

    (2) February 28, 2020 as DOC-1001403 ("**Report No. 2**");

    (3) September 9, 2020 as DOC-1001441 ("**Report No. 3**");

    (4) October 16, 2020 as DOC-1001446 ("**Report No. 4**");

    (5) October 16, 2020 as DOC-1001447 ("**Report No. 5**");

    (6) October 16, 2020 as DOC-1001448 ("**Report No. 6**").

(collectively, the "LDL Test Reports").

23. A few issues arose during the course of the LDL Test, however, these issues did not prevent Bigelow Aerospace from demonstrating that the LDL Test was successful and that the pressure in the B330 was successfully maintained. Specifically, during the course of the LDL Test, a localized power surge in the Las Vegas Valley affected Bigelow Aerospace's headquarters, where the LDL Test was being conducted. The occurrence of the power surge and its impact on Bigelow Aerospace was disclosed in the LDL Test Reports. As set forth in the LDL Test Reports, as a result of the power surge between the dates of 05/08/2020 to 06/08/2020, the computer that houses the data acquisition system suffered a hard-drive failure. The LDL Test Reports also disclosed that on the day of the power surge, and as a result of the power surge, the air conditioning at the Bigelow Aerospace headquarters briefly malfunctioned, which malfunction caused the ambient temperature in the building to rise, which in turn, according to general principles of physics, slightly affected the internal pressure in the B330. Between 07/23/2020 and 08/13/2020, another computer failure resulted in some data not being recorded. However, as set forth in Report No. 6, neither the rise in temperature, the short term loss of the hard-drive, nor the subsequent computer malfunction, had any effect on the successful outcome of the B330 leak test, and the data provided in Report No. 6

makes this abundantly clear. To make up for the loss of data from the power surge and the computer malfunctions (which combined resulted in a loss of data for approximately 60 days), the leak test was extended by an additional two months to provide a full six months of data and this resulted in an 8-month test period.

24. The data included within the LDL Test Reports demonstrates that the pressure at the beginning of the 6-month LDL Test period was essentially the same as at the end of the 8-month period, and the ending pressure was well within the variance that NASA had set for this test.

25. The LDL Test Reports conclusively established, by a preponderance of the data, that pressure was maintained within the B330 for the extended eight-month period, even though there were some issues caused by the power surge and the computer failure events.

26. The extent and scope of the data provided by Bigelow Aerospace in the LDL Test Reports complies with the terms of the Contract, as the LDL Test Reports provide sufficient data to establish that the pressure was maintained in the B330.

27. Accordingly, Bigelow Aerospace fully performed under the terms of the Contract, and it is therefore entitled to full payment of the Contract Amount from NASA, for this portion of the Contract.

28. However, despite Bigelow Aerospace fully performing under the Contract, NASA, through its attorney Vince Vanek in the February 6, 2021 NASA Email and March 6, 2021 NASA Email, is now demanding that Bigelow Aerospace provide it with all of the very extensive, recorded raw test data, which Bigelow Aerospace accumulated during the duration of the LDL Test, from December 20, 2019 through August 31, 2020, before NASA will remit payment of the Contract Amount to Bigelow Aerospace. However, NASA is not entitled to this data until it makes payment of the Contract Amount. NASA is also demanding that Bigelow Aerospace participate in a time consuming and expensive technical coordination meeting at NASA headquarters, that is not required by the Contract. Furthermore, NASA is withholding payment of the $1,000,000.00 Contract Amount from Bigelow Aerospace, unless Bigelow Aerospace complies with this demand.

29. NASA's new data demands and meeting demands do not comply with the terms of the Contract.

7

30.     The payment of the Contract Amount by NASA was due and owing to Bigelow Aerospace on October 16, 2020, and to date, has not been paid by NASA, and is being withheld by NASA from Bigelow Aerospace.

31.     NASA has withheld, and continues to withhold, the payment of the Contract Amount to Bigelow Aerospace.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

32.     Bigelow Aerospace hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 31 inclusive, and incorporate the same as though fully set forth herein.

33.     The Contract between NASA and Bigelow Aerospace, constitutes a valid, binding, and enforceable contract, supported by adequate consideration.

34.     Under the terms of the Contract, Bigelow Aerospace was obligated to complete the LDL Test procedure required by NASA, and provide NASA with the Contract Deliverables (i.e., provide the six (6) scheduled LDL Test Reports), therein providing sufficient data to establish that continuous pressure test was achieved within the variance approved by NASA, and providing a summary of the LDL Test results.

35.     Bigelow Aerospace fully performed its obligations under the Contract, and the data included within the LDL Test Reports demonstrates that the B330 module performed within the NASA-specified variance for this test, and met NASA's leak requirements.

36.     Bigelow Aerospace has performed in good faith, all of its obligations and conditions precedent in and to this obligation under the Contract.

37.     NASA has breached its obligations under the Contract, by and through, including but not limited to, willfully, purposely, intentionally, and/or recklessly failing to pay the full $1,000,000.00 Contract Amount to Bigelow Aerospace, upon Bigelow Aerospace providing the LDL Test Reports, and by demanding that Bigelow Aerospace perform additional actions before NASA will pay the Contract Amount to Bigelow Aerospace.

/ / /

38. As a direct and proximate result of the breach of the Contract by NASA, Bigelow Aerospace has been damaged in an amount in excess of $1,000,000.00.

39. Bigelow Aerospace has been required to incur attorneys fees and costs in prosecuting this matter, and pursuant to the Contract and the laws of the United States of America, should be awarded those attorneys fees and costs from NASA incurred in bringing and prosecuting this suit.

## SECOND CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

40. Bigelow Aerospace hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 39 inclusive, and incorporate the same as though fully set forth herein.

41. There exists under federal law an implied covenant of good faith and fair dealing inherent in the Contract between Bigelow Aerospace and NASA.

42. By the actions identified herein, NASA has breached its respective covenants of good faith and fair dealing inherent in the Contract, by refusing to pay Bigelow Aerospace the Contract Amount, and by demanding that Bigelow Aerospace perform new tasks which were not required under the terms of the Contract, as a condition to NASA paying Bigelow Aerospace the Contract Amount.

43. As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing by NASA, Bigelow Aerospace has been damaged in an amount in excess of $1,000,000.00.

44. Bigelow Aerospace has been required to incur attorneys fees and costs in prosecuting this matter and pursuant to the Contract and the laws of the United States of America, should be awarded those attorneys fees and costs from NASA incurred in bringing and prosecuting this suit.

///

///

///

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

45. Bigelow Aerospace hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 44 inclusive, and incorporate the same as though fully set forth herein.

46. Through the performance of the Contract and good faith actions provided by Bigelow Aerospace as alleged above, NASA has obtained, accepted, and enjoyed the benefits of Bigelow Aerospace having completed the LDL Test and having provided NASA with the LDL Test Reports, related to the 8-month LDL Test performed on the B330, and demonstration of the viability of the B330 module.

47. The foregoing benefits expended and/or provided by Bigelow Aerospace were only expended and/or provided in accordance with the Contract, and with the expectation by Bigelow Aerospace that NASA would pay the Contract Amount to Bigelow Aerospace upon Bigelow completing the LDL Test and submitting the LDL Test Reports to NASA, according the testing standards and schedule agreed upon by NASA and Bigelow Aerospace.

48. In undertaking and participating in the activities alleged above, Bigelow Aerospace has reduced the profits, assets, and business opportunities of Bigelow Aerospace that would have otherwise benefitted, been distributed to, and remained in possession of Bigelow Aerospace, and not NASA.

49. As a result, Bigelow Aerospace has been unjustly enriched in an amount greater than $1,000,000.00, reducing the assets, profits, and business opportunities, of Bigelow Aerospace, as described above.

50. Bigelow Aerospace has been required to incur attorneys fees and costs in prosecuting this matter and pursuant to the Contract and the laws of the United States of America, should be awarded those attorneys fees and costs from NASA incurred in bringing and prosecuting this suit.

/ / /

/ / /

/ / /

10

**PRAYER FOR RELIEF**

WHEREFORE, Bigelow Aerospace prays for relief against NASA as follows:

1. For a declaration of the rights, duties and privileges existing between Bigelow Aerospace and NASA, and each of them herein;

2. For general, special and consequential damages as pled in this Complaint, in excess of $1,000,000.00 in an amount to be determined at trial;

3. For reasonable attorney's fees, costs, pursuant to statute, common law and/or contract;

4. For such other relief as is necessary, including equitable and/or monetary relief, for a just adjudication of this matter;

5. For prejudgment interest on all claims by Bigelow Aerospace herein; and

6. For any other relief as the Court deems just and proper under the circumstances.

Dated this  25th  day of March, 2021

**GERRARD COX LARSEN**

 /s/ Douglas D. Gerrard
Douglas D. Gerrard, Esq.
Nevada Bar No. 4613
John M. Langeveld, Esq.
Nevada Bar No. 11628
2450 St. Rose Parkway, Suite 200
Henderson, Nevada  89074
*Attorneys for* BIGELOW AEROSPACE, LLC